**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

RECEIVED

AUG 2 7 2018

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

BROCK FREDIN,

          Plaintiff,

--against--

HALBERG CRIMINAL DEFENSE,
CHRISTINA ZAUHAR

          Defendants.

Case No.

18cv2514 DWF/BRT

**COMPLAINT**
Jury Trial Demanded

---

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se* hereby alleges the following against Defendant Halberg Criminal Defense ("Halberg Defense") and Christina Zauhar ("Attorney Zauhar" or "Zauhar"):

**NATURE OF THE CASE**

1.    Halberg Criminal Defense and Christina Zauhar brags clients are the "worst" and paints its clients as "rapists", "abusers", and "drunken" in national media publications available to millions of people.[1]  Even for a firm that paints its clients unnecessarily poorly, it went too far by viciously attacking Plaintiff by conspiring to commit fraud in an effort to steal paid criminal retainers to replenish unpaid civil fees.

2.    Plaintiff brings this action against Attorney Zauhar and Halberg Defense to recover damages for malpractice/negligence, breach of contract, excessive legal fees, fraud, and intentional misrepresentation in connection with and related to the action *State of Minnesota v. Brock Fredin*,

---

[1] *"Even for the worst …"  See* https://www.twincities.com/2014/03/08/even-for-the-very-worst-defense-attorneys-swear-to-give-their-best/

SCANNED
AUG 27 2018
U.S. DISTRICT COURT ST. PAUL

Case No. 62-CR-17-3156 ("Miller State Action"), *State of Minnesota v. Brock Fredin*, Case No. 62-CR-18-157 ("Middlecamp State Action") collectively ("State Actions"), *Miller v. Fredin Case No: 62-HR-CV-16-46, Miller v. Fredin Case No: 62-HR-CV-18-202, Schaefer v. Fredin Case No: 62-HR-CV-16-41, and Lindsey Middlecamp v. Brock Fredin*, Case No. 62-HR-CV-17-233 ("Middlecamp Action")  collectively known as ("Actions") pending in Ramsey County.  Attorney Zauhar and Halberg Defense represented Plaintiff continuously in connection with matters relating to the Action(s) from November 2017 to August 2018.

3.      Halberg Defense preys on the difficulties between litigants for the sole purpose of churning excessive and usurious profits in family and misdemeanor actions.  Once in the family court system and/or criminal justice system, Attorney Zauhar makes it nearly impossible for a litigant to get out or successfully obtain a peaceful resolution of their legal matters. With little oversight and the incestuous relationships between family court and/or criminal justice system judges and attorneys through corrupt and discriminatory organizations like the Saint Paul City Attorney's Office, family court and/or criminal defense attorneys have little, if any, incentive to resolve cases quickly and efficiently.  Rather, more often than not, they undertake actions to fuel conflict and prevent resolution in order to keep families and defendants in court for years in an effort to drive up fees as much as possible while the attorneys profit off the misery of others.

4.      Attorney Zauhar and Halberg Defense is not only a prime example of the problems facing the family court and/or criminal justice system but is without question one of the worst offenders and leaders in perpetrating this fraud on families and defendants.  The hidden truth is that for ordinary people, like Plaintiff, Attorney Zauhar unnecessarily delays cases to bilk retainers, fails to take appropriate action to protect their clients' interests and unlawfully siphons their savings and income to the point of nothing making their clients incur enormous debt.  This

2

improper and unethical conduct only destroys families and litigants while lining Attorney Zauhar pockets with exorbitant amounts of cash.

5.      Unfortunately, Plaintiff fell victim to Attorney Zauhar's unethical and fraudulent scam. While representing Plaintiff, Attorney Zauhar deliberately and intentionally withheld material information and undertook actions – many times without Plaintiff's consent – designed to weaken Plaintiff's stance in the Actions and encumber his claims so that Attorney Zauhar could prolong the litigation and bill excessive legal fees.  In doing so, Attorney Zauhar and Halberg Defense breached their duty of loyalty to Plaintiff and failed to exercise reasonable care and diligence to assure that Plaintiff's interests in the Action(s) were fully and timely protected. Attorney Zauhar deliberately wrongful conduct and their failure to exercise reasonable care in their representation of Plaintiff placed him at a disadvantage that made it virtually impossible to recover from subsequently in the litigation and led to the de facto termination of Plaintiff's career, freedom, future parenting rights, free speech rights and travel rights.  In fact, Attorney Zauhar botched virtually every contested issue in the Action(s) to the disadvantage of Plaintiff, no doubt with an eye towards generating more litigation and more fees for Halberg Defense.

6.      In this process Attorney Zauhar caused Plaintiff overwhelming financial harm, including the depletion of Plaintiff's entire savings and income.  To illustrate Attorney Zauhar's unbridled greed, when Plaintiff attempted to negotiate his fees back for Halberg Defense's malpractice and unethical conduct, Attorney Zauhar refused to return one cent.  Most importantly, though, Attorney Zauhar conduct has robbed Plaintiff of the successful continuance of his career during its most productive years by negligently allowing quasi criminal Harassment Restraining Order ("HRO") criminal convictions for allegedly speaking out against Attorney misconduct and standing idle while two (2) unlawful fifty-year (50) HRO Orders issued due to the negligent

malpractice of Attorney Zauhar.[2]  As a result, Plaintiff seeks damages against Attorney Zauhar and Halberg Defense for its unlawful and wrongful conduct.

## JURISDICTION AND VENUE

7.     This Court has subject matter over Plaintiff's claims of malpractice/negligence, breach of contract, excessive legal fees, fraud, and intentional misrepresentation against Attorney Zauhar and Halberg Defense pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8.     Venue is proper in the United States District Court for Minnesota pursuant to 28 U.S.C. § 1391(B) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this Judicial District.

9.     The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

10.     Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

11.     Plaintiff Brock Fredin is a resident of the State of Wisconsin with an address of 1905 Iris Bay, Hudson, WI 54016.

12.     Upon information and belief, Defendant Halberg Defense is a law firm registered in the State of Minnesota with an address of 7900 Xerxes Ave, S Suite 7100, Bloomington, Minnesota.

---

[2] Attorney Zauhar encouraged findings and failed to file motions to dismiss that led to unlawful Fifty (50) year HRO's over allegations of petty legitimate First Amendment protected criticism.

13.     Upon information and belief, Defendant Christina Zauhar is a resident of the State of Minnesota with a work address of 7900 Xerxes Ave, S Suite 7100, Bloomington, Minnesota.

## FACTUAL ALLEGATIONS
### Background

14.     In an effort to create tabloid coverage, a desperate Assistant Minneapolis City Attorney named Lindsey Middlecamp ("Middlecamp") began unlawfully leaking – using her public position - confidential Appellate decisions and posting obsessive Tweets on her personal revenge porn blog.  In her efforts, she was able to publish Plaintiff's photo(s) and defamatory content to hundreds of thousands of people.  Plaintiff exercised his free speech by criticizing her on his own Facebook - without tagging, messaging or otherwise notifying Middlecamp - in an effort to immediately prevent any further harm to Plaintiff's life and/or career.  As a result of this defamatory behavior by Middlecamp, Plaintiff lost his job and so far has been unable to gain employment for a period approaching two (2) years.

15.     On April 28, 2017, Plaintiff's home in Wisconsin was illegally entered by a swat style raid led by the Saint Paul City Police.  During the raid, Plaintiff was illegally served a HRO from Middlecamp for courageously and ethically speaking out against her misconduct on his own Facebook.  As a consequence, all of Plaintiff's possessions were ransacked and illegally taken as punishment for invoking first amendment rights to speak against this misconduct.  During the raid, Plaintiff was served with two trumped up misdemeanor criminal charges for allegedly posting on his own Facebook in protest.[3]  The criminal charges were categorically false and obtained to

_____

[3] The Saint Paul Police fraudulently drummed up a Match.com profile visit undertaken by Plaintiff's ex-girlfriend in December 2015 and claimed this was an HRO violation despite this action being undertaken through no fault of his own for the collateral purposes of serving Middlecamp's HRO.  Indeed, Attorney Zauhar failed to accurately depict or effectively explain the Match.com profile visit to a six (6) person jury comprised of free speech experts.  In furtherance, Attorney Zauhar failed to explain the collateral purpose of the criminal charges by

provide further collateral consequence to Plaintiff for daring to speak out against Judicial and Attorney misconduct.

16.     In May 2018, Plaintiff obtained sealed documents in a separate federal court action that informed Plaintiff that the raid and criminal charges were executed to procure evidence in two (2) civil cases *Schaefer v. Fredin Case No: 62-HR-CV-16-41 and Lindsey Middlecamp v. Brock Fredin*, Case No. 62-HR-CV-17-233. In May 2018, Attorney Zauhar and Halberg Defense was notified by Plaintiff immediately of this evidence and the meaning thereof. Instead, Halberg Defense did nothing, and sat on the evidence despite Plaintiff's extraordinary efforts and expense in obtaining the admission.

<u>Plaintiff's Retention of Zauhar and Halberg Defense</u>

17.     In November 2017, Plaintiff contacted Attorney Zauhar and Halberg Defense in an effort to resolve the matter quickly. Defendant Attorney Zauhar agreed to represent Plaintiff in these Action(s) in exchange for an upfront retainer fee.

18.     Plaintiff immediately began to have doubts concerning Attorney Zauhar's representation of him. Attorney Zauhar did nothing on the Actions for weeks and instead relied on email to contact the Saint Paul City Attorney's Office. And, as explained more fully below, Zauhar and Halberg Defense breached their representations to Plaintiff and never filed timely motion(s) to dismiss in the Miller, Schaefer, and Middlecamp Actions or Middlecamp State Actions.

19.     Moreover, shortly after Plaintiff was hooked by entering into the retainer agreement, Plaintiff began to start having further doubts about Zauhar. In February 2018,

---

willfully and negligently filing motions in limine to deprive her ability to disclose this information effectively restraining her own legal effectiveness at the expense of losing the trial.

Attorney Zauhar started to make further questionable demands and engaged in what can only be characterized as scam-like behavior. For instance, despite Plaintiff having substantial assets at the time and was earning a previous business gross revenue of over $200,000 per year as a software architect prior to his career being destroyed, Attorney Zauhar demanded an additional $5,000 more to appear in the Miller, Schaefer, or Middlecamp civil Actions. In other words, when Attorney Zauhar saw that not only did Plaintiff have deep pockets, she sought to tie up and siphon every penny the had on what should have been a straightforward HRO matter. When Plaintiff rebuffed the demand, Attorney Zauhar failed to even file dismissals or motions to vacate.

20.     Rather than simply filing a short motion to dismiss or vacate for the Miller, Schaefer, or Middlecamp Action on or during the appropriate timeline, Attorney Zauhar instead chose to prolong the litigation by repeatedly returning to efforts to conduct hearings, encourage judicial findings, and other costly legal maneuvers that would drive up cost(s).

21.     In the time that Attorney Zauhar represented Plaintiff in the Miller and Schaefer Action, Attorney Zauhar and Halberg Defense failed to advance Plaintiff's interests in any form or fashion. Rather, each action Attorney Zauhar undertook undermined Plaintiff's position in the litigation, made it increasingly difficult and buried him further in debt and attorneys' fees. As explained below, it was apparent that rather than attempting to reach an efficient resolution of the Miller, Schaefer, or Middlecamp Action, it was Attorney Zauhar's intention to keep Plaintiff in court for as long as possible, fan the flames of the parties' conflict and siphon the parties' financial resources. As a result of Attorney Zauhar negligence and dishonest conduct explained more fully below, Plaintiff terminated Zauhar in the Miller, Schaefer, and Middlecamp Action on August 20, 2018.

22.     Attorney Zauhar left the Miller, Schaefer, and Middlecamp Action as well as the State Actions in absolute disarray for Plaintiff to the point where no reputable family or criminal defense lawyer would touch the case.  Moreover, Attorney Zauhar had siphoned nearly all of his assets so Plaintiff could not afford to hire a new attorney.  Plaintiff was forced to proceed with the Miller, Schaefer, and Middlecamp Action largely *pro se*, which led to Plaintiff being mocked, tormented and disgraced by the Ramsey County Court and Judge Patrick C. Diamond.[4]

<u>Halberg's Embarrassing Legal Defense</u>

23.     The crux of contention at the early stages of the Miller State Action was whether probable cause existed for misdemeanor charges for allegedly invoking first amendment rights by publishing a single public post or profile edit on Match.com to apologize for a miscommunication in December 2015.  In order to affix probable cause and evidence in a misdemeanor, a Florence hearing was necessary.  *See State v. Florence*, 239 N.W.2d 892 (1976) ("If the defendant or the prosecution has demanded a hearing on the issue of probable cause, the court shall determine on the basis of the evidence presented whether there is probable cause to believe that defendant committed the offense charged.") Despite their representations to the contrary at the time of their retention, Zauhar never once took any action to petition the court for a First Amendment expert witness, or any other strategy to outwit the Courts refusal to hear First Amendment defense even despite Plaintiff and Zauhar prior agreement in the Ramsey County Court that one would

---

[4] Plaintiff was mocked for attempting to file a Writ of Prohibition or Appeals based on Attorney Zauhar's negligent conduct.  Judge Patrick C. Diamond claimed this was "sham litigation" and valid for "sanction".  In other words, Judge Diamond was attempting to insulate his fraudulent rulings by initially discrediting Plaintiff without any opposition or complaint whatsoever by Attorney Zauhar.

commence. And, further, waited until the very last moment prior to trial by wrongly arguing the statute in an effort to drive up legal fees and lock in the retainer status.

24.     Rather than simply filing a short motion petitioning for a First or Fourth Amendment export on the issue of illegal collection of evidence, or free speech rights with reference to a Match.com profile edit, Attorney Zauhar instead chose to prolong the litigation by repeatedly returning to the court every four-to-five weeks for inconsequential status hearings. Each time when the court and prosecutor would apparently deny or oppose the request, Attorney Zauhar would stand idle while Plaintiff was subjected to a malicious and false tabloid media campaign that destroyed his professional livelihood - without doing anything - to enter into another short negotiation with all parties or communication to the court to prevent pre-trial publicity.

25.     Attorney Zauhar's scheme was apparent, though.  Instead of addressing the contested issue – first amendment constitutionality of a public Match.com post and the fourth amendment illegal collection of evidence during the raid – in an abbreviated hearing that would have likely resolved the entire matter in its early stages, Attorney Zauhar wished to prolong the Miller State Action by repeatedly returning to court in nearly off-the-record proceedings on a near monthly basis until the Miller State Action was ripe for an exponentially more expensive full contested trial.  This placed Plaintiff at a decisive disadvantage in the State and Miller, Schaefer, and Middlecamp Action(s) as it pertained to seeking time from salvaging his career as well as dramatically increased the cost of litigation and attorneys' fees to the benefit of Attorney Zauhar and Halberg Defense.

26.     As set forth above, in failing to request a hearing on-the-record or through motion practice, Zauhar and Halberg Defense breached its duty of loyalty to Plaintiff and failed to exercise

ordinary reasonable care and diligence in its representation of Plaintiff in the Miller State

Action. Had Zauhar protected Plaintiff's interests in requesting a hearing or contesting the

refusal of the Court to hear First Amendment defenses at the early stages of the litigation,

it is more likely than not that Plaintiff would have prevailed in the Miller State Action, or,

at the very least, have obtained quick resolution to the matter. In fact, additionally,

Attorney Zauhar alarmingly failed to file a timely motion to dismiss in the Schaefer Action

for an easily winnable Jurisdiction and Venue challenge as no party to the matter lived or

worked in Ramsey County.

27.    As a proximate cause of and but for Attorney Zauhar for unlawful conduct,

Plaintiff suffered considerable damages. During the period of Attorney Zauhar's

representation alone, Plaintiff suffered unnecessary and significant financial damages in

the excessive cost of Attorney Zauhar extraordinary legal fees and numerous unnecessary

expenses associated with the prolonging of the litigation.  Most importantly, Plaintiff

suffered damages in the form of significant emotional distress from being unfairly vilified

and having to undergo invasive and unnecessary legal proceedings without appropriate

legal representation. Subsequent to Attorney Zauhar termination, Plaintiff suffered

significant financial damages in the form of having to retain new counsel that expended

substantial fees to try to repair the irreparable damage Zauhar caused. Plaintiff also was

forced to incur additional significant expenses as a result of Attorney Zauhar's negligent

and unlawful conduct in failing to request a dismissal in Miller and Schaefer matters,

limine, or other legal errors at trial.  Moreover, as a result of Attorney Zauhar negligent

and unlawful conduct, Plaintiff had to undertake self-sufficient methods for obtaining the

return of all his property at extreme financial and emotional expense as a result of Attorney

Zauhar negligent and unlawful conduct that caused Plaintiff financial and emotional damage. All of these damages could have been avoided had Attorney Zauhar exercised reasonable care and diligence by requesting a dismissal hearing at outset of the Miller, Schaefer, Middlecamp Action or properly contesting First and Fourth amendment issues in the State Action rather than prolonging the litigation to churn excessive legal fees and costs. Consequently, Plaintiff seeks actual and compensatory damages.

### Miller Civil Action

28.     On March 22, 2018 Plaintiff's ex-girlfriend, Grace Elizabeth Miller, petitioned for a new harassment restraining order. Ms. Miller's previous restraining order had expired on March 21, 2018. In order to drum up a fraudulent request for a fifty-year (50) HRO, Ms. Miller made categorically false statements. The allegations consisted of two petty Internet criticisms. Attorney Zauhar failed to conduct discovery, depose Ms. Miller, or even take a screenshot of the alleged criticism. Even worse, Attorney Zauhar failed to even file a timely motion to dismiss arguing First Amendment issues or the myriad of other legal abnormalities that have accompanied this set of cases including the pile-on scheme to coach orders from her friends to illicit tabloid coverage.

29.     In April 2018, Attorney Zauhar failed to properly contest the fifty-year ("50") HRO hearing and negligently allowed Ms. Miller to embed a show cause action into the same hearing without giving Plaintiff and, most importantly, the Court any prior notice whatsoever. This tacitly allowed Ms. Miller to gain a fifty-year (50) order by allowing the Court to make findings of two (2) HRO violations based on petty Internet public criticism which provides the statutory requirement for issuing a fifty-year (50) Order.

30.     During this same hearing, however, Attorney Zauhar made no mention or even attempted to advance the interests of her own client, Plaintiff, by informing the Court of Ms. Miller's malicious scheme and the tabloid coverage precluding Plaintiff from a role in the local

economy.   Attorney Zauhar made no attempt to negotiate with Ms. Miller's legal representative, Karmen McQuitty, prior to the initiation of such action for the purposes of mediating or resolving the issues prior to the hearing.

31.    Even worse, Attorney Zauhar failed to file a police report or even inform the Court that Ms. Miller had conducted witness tampering with Plaintiff by directing a deputy to contact Attorney Zauhar before Attorney Zauhar was retained for the civil action in an apparent effort to intimidate her representation.   Indeed, this was a clear effort to cause undue burden and prejudice to Plaintiff's representation in the Miller State Action.

<u>Schaefer Civil Action</u>

32.    In January 2018, Catherine Schaefer petitioned Ramsey County Court for a show cause hearing.   The initial hearing was heard by Judge Tony Atwal.   Prior to the hearing, however, Attorney Zauhar failed to advance Plaintiff's interests in anyway whatsoever, failed to file a timely motion to dismiss, or make any other arrangements to seek a positive resolution.

33.    In yet another hearing, this time a do-over where Attorney Zauhar had another chance to fix her previous errors, Attorney Zauhar failed to advance Plaintiff's interests during an identical April 2018 hearing before Judge Diamond.

34.    In May 2018, Attorney Zauhar negligently allowed Catherine Schaefer's lawyer, Peter R. Mayer, to petition the Court for yet another show cause hearing.   This time over publishing of Ms. Schaefer's false police reports on the Internet.   Despite the police reports being public documents, did not list Ms. Schaefer's name, Attorney Zauhar failed to successfully dismiss the hearing.   In fact, Attorney Zauhar agreed to findings which were used to issue the fifty-year (50) year ex parte HRO.

35.     On June 25, 2018, Judge Diamond issued a final Order providing extensive findings based on Attorney Zauhar's consent.  The findings were false, destructive, and paved the way for issuance of an ex parte fifty-year (50) HRO.

36.     On June 29, 2018, Attorney Zauhar failed to file a motion to dismiss after the ex parte Order was issued.  Instead, relying on Plaintiff to pick up the pieces of her failed legal representation.

37.     On June 29, 2018, Attorney Zauhar received an email from Peter R. Mayer admitting the July 9, 2018 fifty-year (50) HRO hearing was an abuse of process when he stated "I look forward to hearing about your client's willingness to reach some kind of an agreement that dismisses his pending appeal and removes the need for the July 9 hearing."  In other words, Peter R. Mayer admitted that he was using a fifty-year (50) HRO hearing on July 9, 2018 as an action to dismiss a pending appeal in the matter.  Per usual, Attorney Zauhar failed to inform the Court of or stop this malicious scheme.

Miller State Action and Criminal Trial

38.     On Monday July 16, 2018, the Miller State Action and criminal trial finally began after nearly fifteen (15) months of waiting.  During the trial, the state called two witnesses, Grace Elizabeth Miller, and Saint Paul Police Sergeant David McCabe.

39.     As a proximate cause of Attorney Zauhar and Halberg Defenses' negligence, the following is provided:[5]

---

[5] Two (2) high profile female attorneys magically found themselves on the jury panel.  Carey Bollinger, daughter of Columbia University president Lee C. Bollinger and St. Thomas law professor Theresa Collette. Upon information and belief, Ms. Bollinger is a First Amendment expert, Harvard/Columbia educated lawyer, and former second circuit law clerk.  Even this esteemed jury could not ascertain fundamental First Amendment speech based on failed jury instructions.

- Allowed an arrest warrant to issue when the prosecutor claimed Ramsey County lost Plaintiff's booking information despite previously being "long-booked".

- As an issue of fact, Attorney Zauhar failed to introduce evidence that the criminal investigation was closed in March 2016 and only reopened in January 2017 following tabloid coverage unlawfully leaked by a Minneapolis City Attorney Lindsey Middlecamp.

- As an issue of fact, Attorney Zauhar failed to introduce evidence that the April 28, 2017 raid was done to procure evidence in two (2) civil cases.

- As an issue of fact, Attorney Zauhar failed to introduce evidence that the raid was done through the collateral and fraudulent use of criminal charges over a Petty Match.com profile edit or visit.

- Attorney Zauhar failed to contest the Jury Instructions denying the ability to raise First Amendment defenses to the Match.com profile edit or visit.

- Attorney Zauhar failed to introduce an expert witness on the issue of First Amendment defenses around the Match.com profile edit or visit.

- Attorney Zauhar failed to introduce an expert witness on the issue of Fourth Amendment defenses around the unlawful swat raid.

- Attorney Zauhar failed to subpoena Lindsey Middlecamp or Catherine Schaefer to testify regarding their malicious scheme to pile-on Orders during the Miller or Middlecamp State Actions.

- Attorney Zauhar failed to accurate explain the Match.com push-notification to the jury and that it was a result of Grace Miller's affirmative actions to generate a message to herself.

- Attorney Zauhar failed to file a post-verdict motion for mistrial based on irregular jury selection and other abnormalities related to the trial.

- Attorney Zauhar failed to mention that the alleged victim, Grace Elizabeth Miller, Plaintiff's ex-girlfriend, continued her relentless communication even after the Match.com profile edit or visit.

- Attorney Zauhar failed to mention that the alleged victim, Grace Elizabeth Miller, Plaintiff's ex-girlfriend, continued her relentless stalking campaign by coaching ex-parte communication from her girlfriend Catherine Schaefer.

- Attorney Zauhar instead chose to file a motion in limine to prevent these issues from being raised effectively restraining her ability to tell the complete story to the six-person jury.

- Attorney Zauhar failed to contest the timeline purported to be unwanted communication by the State, despite the timeline including many communications during the routine prior relationship.

- Attorney Zauhar failed to notify the Court that the alleged victim, Grace Elizabeth Miller, had conducted even further ex parte communication to witness tamper in violation of the law.

- Attorney Zauhar failed to notify the Court of witness tampering by Lindsey Middlecamp. Lindsey Middlecamp had terrorized Plaintiff's family at the Twin Cities Grill within the Mall of America in Bloomington, Minnesota in March 2018 by calling the police on Plaintiff's family including two young children who were inadvertently eating on a Saturday night unbeknownst that Lindsey Middlecamp was also present to gain advantage in the Miller State Action and Middlecamp State Action.

- Attorney Zauhar failed to notify the court or preclude pre-trial publicity, including direct, and ongoing threats directly originating from Lindsey Middlecamp, Grace Miller, and Catherine Schaefer.

- Attorney Zauhar failed to contest verbal gag orders issued by Judge Sophia Vuelo or even defend her client against the increasingly hostile acts by Judge Vuelo used to intimidate Plaintiff.

<u>Middlecamp State Action</u>

40.     As a proximate cause of Attorney Zauhar's negligence, Attorney Zauhar failed to seek a dismissal in the Middlecamp State Action.   Despite having multiple witnesses contesting the state allegations, Attorney Zauhar failed to communicate with the City Attorney's Office.   Furthermore, Attorney Zauhar failed to properly contest a Spriegl motion seeking the state's ability to enter "prior-bad acts" as evidence.

<u>Zauhar Motion to Withdraw and Negligent Attempt</u>
<u>To Take All Retainer Fee(s)</u>

41.     As mentioned above, Attorney Zauhar appeared before the court on Plaintiff's behalf eleven times in nine months to request the unsuccessful dismissal of State, Miller, Schaefer, or Middlecamp Actions between – November 2017 and August 30, 2018 - in increasing efforts to prolong litigation.   As a result, Plaintiff was burdened with excessive legal fees and exhaustive unnecessary proceedings that were easily avoidable using appropriate motion practice.   After embarrassingly losing the Miller State Action by failing to properly argue first amendment constitutionality or successfully obtaining wins or even successful resolutions in any hearing or Action whatsoever, Attorney Zauhar filed

a motion to withdraw on August 20, 2018 out of the blue without any advanced notice.[6]  In the

wreckage Attorney Zauhar created, Plaintiff was left with two fifty-year (50) HRO Orders issued

without any substantive legal basis and was forced to file a Writ of Prohibition along with several

appeals on his own or face the possibility of being entangled in the state court system for a period

up to Fifty (50) years, long past his expected life span.

42.     Following the verdict, based on Attorney Zauhar's negligent performance, which

Attorney Zauhar has failed to take responsibility, Plaintiff informed Attorney Zauhar of his

extreme efforts to obtain employment by forwarding several job denial emails.  Without any

sympathy, Attorney Zauhar had previously claimed it was "easy" to obtain a job even though

Plaintiff was subject to false extreme tabloid coverage that google bombed his Internet search,

career, and faced petty pending charges that Attorney Zauhar has failed to adequately represent.

At this stage, however, Attorney Zauhar decided to withdraw from the representation knowing that

Plaintiff was unable to immediately pay civil fees.

43.     On August 16, 2018 Attorney Zauhar sent an email admitting that she would

commit fraud by exchanging a paid retainer in the Middlecamp State Action to cover unpaid civil

fees – cases she lost and failed to advance Plaintiff's interest in any way whatsoever – by

attempting to deceive Plaintiff.  In the email, Attorney Zauhar claimed that she would "forgive"

the unpaid civil fees.  As a gesture of good will, Attorney Zauhar alleged, she would then

accompany Plaintiff to the Miller State Action Sentencing hearing.  A hearing in which she was

---

[6] Attorney Zauhar had the advantage and backing of famed UCLA law professor Eugene
Volokh to dismiss the *Miller State Action* and *Middlecamp Action* on First Amendment grounds.
*See* https://reason.com/volokh/2018/05/08/minnesota-court-apparently-orders-man-no.   Instead,
Attorney Zauhar decided to ignore this evidence in all matters.

already contractually obligated to attend.  In other words, Attorney Zauhar was threatening to withhold representation that was not only completely paid, but that was contractually obligated.

44.     On August 16, 2018 Plaintiff declined the offer to withdraw and instead reiterated that he intended to pay the unpaid civil fees – despite Attorney Zauhar embarrassingly losing each hearing – and that he was still vigorously seeking employment.

45.     In order to deceive Plaintiff and bait his response for purposes of negligently withdrawing from representation, Attorney Zauhar conspired with her law partners David Risk to schedule a conference call on August 17, 2018 without consulting or noticing Plaintiff.  Plaintiff inadvertently called and was placed on a twenty (20) minute wait while Halberg Defense bumbled around and hatched an organized scheme to bait a response for purposes of negligently withdrawing from representation.

46.     During this call, Attorney David Risk immediately threatened Plaintiff with criminal incarceration by alleging that he would violate attorney-client privilege and disclose confidential communications to the Ramsey County Court for purposes to intimidate Plaintiff into agreeing to allow Halberg Defense into withdrawing and taking all unearned criminal retainer fees in what appears to be a fraudulent scheme to replenish unpaid civil fees.  Plaintiff notified Attorney David Risk that this was indeed a threat and fraud that he would not be intimidated by this petty and false legal tactic.  Attorney David Risk shot back that Plaintiff's pointing out that this was indeed a threat was somehow a threat to the Halberg Firm.  In Attorney David Risk's magical worldview pointing out misconduct by him is somehow a threat to the firm.  Indeed, the call was recorded to provide evidence of Attorney David Risk's threat to violate Attorney-Client and fraud to

steal a criminal retainer to replenish unpaid civil fees. Indeed, Attorney Zauhar cowardly allowed this situation to unfold based on her willful refusal to communicate during the call and character assassinate Plaintiff to her partners.

47.     Knowing that Attorney Zauhar, Attorney Risk, and Halberg Defense committed attorney misconduct, Halberg Defense sought an advisory opinion from the Minnesota Professional Responsibility Board on or after August 17, 2018. It goes without saying Halberg Defense and Attorney Zauhar would not have sought an advisory opinion without acknowledging their wrongful actions.

48.     In the motion to withdraw, Attorney Zauhar made the following false statements of fact and testimony before the court in efforts to **conceal** her true motive(s):

> "irreconcilable breakdown in the attorney-client relationship and have been unable to effectively communicate...".

49.     In the weeks prior to the motion to withdraw, Attorney Zauhar asked Plaintiff for more money to represent him in the Miller, Schaefer, and Middlecamp Action. In fact, during a July 2018 in-person meeting, Attorney Zauhar asked for $5,000 to represent him in the Middlecamp Action even after initially being paid $1,000 for a brief avoidable court appearance that Attorney Zauhar negligently failed to oppose. Attorney Zauhar was tacitly using a threat of withdraw in the State Action as a way to gain additional monies in the Miller, Schaefer, and Middlecamp Action.

50.     Similarly, in June 2018, Zauhar purported statements prior to requesting more money were that she could "dismiss" as it relates to a June 25, 2018 Schaefer Action. Upon receiving Zauhar's purported statement, Plaintiff was immediately led to believe that Zauhar was withholding her legal representation to leverage higher fee(s) even though Zauhar was paid nearly

$13,000 to represent Plaintiff in the State Action.  After Plaintiff refused this demand, Attorney Zauhar attempted to file a motion to withdraw from the Middlecamp Action.

51.     Additionally, on August 20, 2018, when Attorney Zauhar filed a motion to withdraw from the State Actions, it followed a prior request for additional money in the Miller, Schaefer, and Middlecamp Action.

52.     Upon receipt of the motion, Plaintiff noted a deadline for his own opposition papers on August 25, 2018.  Plaintiff attempted to communicate with Attorney Zauhar and Halberg Defense by sending a letter by email requesting that Halberg Defense cease its malicious actions.  After Attorney David Risk sent another antagonistic letter by email, Plaintiff noticed that Attorney Zauhar had attempted to schedule a withdraw hearing without consulting with Plaintiff.  And, again, this seems to be a pattern of misconduct, as she also threatened to from the Middlecamp State Action immediately prior to trial after being paid a retainer.

53.     Even after being confronted, Attorney Zauhar unfortunately continued her misconduct by attempting ghost communication to the court through an email message to lauren.durand@courts.state.mn.us - without copying or notifying Plaintiff - on or before Monday August 20 in a desperate effort to move the motion to withdraw hearing forward to deprive her client the ability to properly oppose and/or address the motion to withdraw.

54.     The record here conclusively demonstrates that Attorney Zauhar breached contract and attempted to withdraw immediately prior to trial in efforts to unlawfully take all paid legal fee(s) while leaving her client unprotected and without legal representation going into a very serious criminal trial and sentencing hearing.

55.     Attorney Zauhar did not disclose the request to move the hearing forward to Plaintiff and/or the prosecutor until the very last moment.  In effect, Attorney Zauhar emailed Plaintiff the following week, at the very last moment, in a scam tactic to block Plaintiff's knowledge of Attorney Zauhar's improper actions.  Attorney Zauhar feigned ignorance, both to the court and Mr. Christie, to circumvent Plaintiff's ability to file an opposition to his motion to withdraw.

56.     Upon receipt of the email, Plaintiff immediately took emergency action to cease the improper activity by taking unprecedented extraordinary measures to email the court, prosecutor, and all parties therein to prevent Attorney Zauhar from malpractice:

> I am in receipt of Halberg Defense attempt to schedule the Motion to Withdraw hearing.  Unfortunately, I was not contemporaneously copied on any of this communication and am not available on Thursday.
>
> I note that Halberg Defense emailed or communicated with the Court seeking to schedule the hearing date on the motion to 10:30AM on August 23, 2018 without consulting or noticing me.  This was a blatant attempt by Halberg Defense to attempt to thwart my ability to oppose the motion as my opposition papers are currently due on September 3.
>
> I instructed Halberg Defense to immediately cease communicating with the Court and/or Steve Christie concerning the pending motion to withdraw without copying me contemporaneously in such communication.  Please disregard any of their requests unless it's clear that I'm also copied.
>
> Thank you for your consideration.

57.     Halberg Defense was so infuriated that upon receipt of this email contesting her unlawful attempt to move the hearing up to circumvent Plaintiff's ability to file a response, that they took to generating emails to mock and undermine Plaintiff by sending an email to the Court – alleging that Plaintiff was lying about his availability - merely out of pure anger after being exposed to the Court for their improper conduct.

21

58.     Unfortunately, Attorney Zauhar's misconduct did not cease with the motion to withdraw. Even after being confronted with her misconduct, she continued by emailing the court to move the hearing date to known conflict for Plaintiff no doubt in an effort to keep Plaintiff absent from the hearing. And, again, this was after Attorney Zauhar was asked to cease communicating with the Court with reference to a hearing date. As a retaliatory tactic, Attorney Zauhar later claimed she had to "verify" the hearing date implying that Plaintiff was somehow lying about his earlier availability. Later, Attorney Zauhar ceased copying Plaintiff on the email and simply scheduled the hearing without Plaintiff's consent or knowledge. In effect, Attorney Zauhar blatant attempt was to prevent Plaintiff from gaining competent defense regarding this proceeding and to further defame his character.

59.     On April 24, 2018, the motion to withdraw hearing was heard by the Court. Halberg Defense and Attorney Zauhar attempted to have a private conversation in-chambers without Plaintiff's presence to expedite the withdraw. Upon witnessing this maneuver, Plaintiff informed the Court this was unacceptable and Attorney Zauhar attempted a private tabled bench discussion without Plaintiff's presence.

60.     Illustrative of Zauhar's negligent legal defense, prior to the April 24, 2018 hearing, Judge Sophia Y. Vuelo attempted to assault Plaintiff once again with her bailiff and several other deputies. As what has become custom, Judge Vuelo orders her deputies to search Plaintiff and any of his parties including his elderly mother. This time, however, the deputies cornered Plaintiff, threw him against a wall, grabbing hold of him, and humiliatingly searched him while repeatedly demeaning him in front of the entire

courtroom audience packed around him within feet of the courtroom door.  Attorney Zauhar and

Halberg defense failed yet again to defend their client.

61.    As a proximate cause of and but for Zauhar conduct in failing to secure appropriate

dismissals, failing to vigorously defend at trial, and withdrawing by fraudulently stealing retainers,

Plaintiff suffered significant financial damages. These damages include the continued loss of

Plaintiff's career as a software architect and income.  Plaintiff attempted to mitigate the damages

by accepting a lower level positions at fund Attorney Zauhar unsuccessful legal activities.

However, these positions are of substantially less prestige and caliber as Plaintiff's previous roles.

Plaintiff also suffered a significant pay cut in these roles. Had Zauhar exercised reasonable care

and diligence by seeking and agreeing to filing appropriate motions to dismiss unlawful legal

Action(s) and prevented conflicts to Plaintiff's normal work schedule, Plaintiff would not have

lost his more prestigious role.

## COUNT 1
## (LEGAL MALPRACTICE/NEGLIGENCE)
### (Attorney Zauhar and Halberg Defense)

62.    Plaintiff re-alleges and incorporates by reference paragraphs 1–61 of this

Complaint as though fully set forth herein.

63.    As legal counsel for Plaintiff, Zauhar owed Plaintiff duties of professional care,

loyalty, diligence and skill.

64.    By engaging in the conduct set forth above, Zauhar failed to exercise ordinary

reasonable care and diligence used under the same or similar circumstances by attorneys and

thereby breached those duties of professional care owed to Plaintiff, which included but are not

limited to:

(a)    Failing to petition the court for First and Fourth Amendment expert witness at the

outset of the Miller and Middlecamp State Action, which was requested by Plaintiff;

23

(b)     Failing to cite the that criminal charges were declined in March 2016 but only reopened after unlawful leaking by the City Attorney's Office to advance their own case;

(c)     Failing to include evidence of an unlawful swat raid and frivolous criminal charges that were used as the legal basis to collaterally serve Ms. Middlecamp's HRO;

(d)     Failing to petition the court for a motion to dismiss hearing on dismissing the Schaefer Fifty-Year (50) HRO at the outset of the Schaefer Action, which was requested by Plaintiff;

(e)     Failing to petition the court for a motion to dismiss hearing on dismissing the Miller Fifty-Year (50) HRO at the outset of the Miller Action, which was requested by Plaintiff;

(f)     Failing to petition the court for a motion to vacate the Middlecamp two-year (2) HRO – despite having the backing of Eugene Volokh who remains a leading First Amendment expert – by way of a March 2018 article on reason.com.

(g)     Failing to petition the prosecutor for a dismissal of frivolous legal charges at the outset of the State Action, which was requested by Plaintiff;

(h)     Engaging exclusively in off-the-record proceedings with the court;

(i)     Engaging exclusively in off-the-record proceedings with the prosecutor;

(j)     Failing to consult or advise Plaintiff on a proposed forensic investigator or evaluators prior to making a submission to opposing counsel and the court;

(k)     Agreeing to – many times without Plaintiff's consent – hearing schedules that conflicted with Plaintiff's work schedule that resulted in Plaintiff's forced resignation from software development positions;

(l)     Failing to consult or advise Plaintiff on a proposed forensic investigator or evaluators prior to making a submission to opposing counsel and the court;

(m)     Filing motions to withdraw in the Middlecamp State Action immediately prior to trial in efforts to prejudice Plaintiff;

(n)     Filing motions to withdraw in the Miller State Action immediately prior to a sentencing hearing in efforts to prejudice Plaintiff;

(o)     Ghost communication with the court in secret efforts to move hearing dates forward to circumvent Plaintiff's ability to file oppositions;

(p)     Continued communication with the Court regarding a motion to withdraw hearing despite being told to cease;

(q)     Legal threats following efforts to withdraw by Attorney Zauhar;

(r)     Falsely making statements of fact to the court and providing false testimony to conceal unlawful ex-parte communication with the prosecutor and maintain exclusive business interest with the Saint Paul City Attorneys office;

(s)     Failing to take any action whatsoever to prevent pre-trial publicity or inform the court of Plaintiff's adversaries vicious scheme to coach pile-on Orders;

65.     As a direct and proximate result of Zauhar negligence and failure to exercise reasonable diligence and care in their representation of Plaintiff in the Miller, Schaefer Middlecamp and State Actions, Plaintiff has suffered injury and damages as set forth more fully above in an amount to be determined at trial.

### COUNT 2
### (Breach of Contract)
### (Attorney Zauhar and Halberg Defense)

66.     Plaintiff re-alleges and incorporates by reference paragraphs 1–65 of this Complaint as though fully set forth herein.

67.     Through the conduct alleged in this Complaint, Zauhar materially breached its express and implied contractual obligations to Plaintiff that it would take all action legally necessary and appropriate to protect Plaintiff's interests in the Miller, Schaefer, Middlecamp and State Action(s); that it would perform all legal services with due care and diligence; and that it would provide Plaintiff with professional, skilled and careful lawyers to handle the Middlecamp and State Action(s).

68.     As a direct and proximate result of Zauhar material breach of contract, Plaintiff has suffered injury and damages as set forth more fully above in an amount to be determined at trial.

### COUNT 3
### (Excessive and Wasteful Billing)
### (Attorney Zauhar and Halberg Defense)

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1–68 of this Complaint as though fully set forth herein.

70.     An attorney must charge a client fair and reasonable fees, and is held to the highest standards when dealing with clients in connection with matters involving legal fees.

71.     Zauhar breached its duties to Plaintiff by performing legal services that were unnecessary, inappropriate, wasteful, unlawful and which did not protect or advance Plaintiff's interests, or legal and factual arguments in the Middlecamp and State Action.

72.     Zauhar further breached it duties to Plaintiff by charging excessive, unnecessary and fraudulent fees and overcharging Plaintiff with respect to services performed in connection with, or related to, the State Action.

73.     Zauhar attempted to fraudulently seize a paid retainer in the Middlecamp State Action to pay for civil fees.

74.     As a direct and proximate result of Zauhar unnecessary, excessive, unlawful fees and overcharges, Plaintiff has suffered damages as set forth more fully above in an amount to be determined at trial.

## COUNT 4
### (Intentional and Negligent Representation)
### (Attorney Zauhar and Halberg Defense)

75.     Plaintiff re-alleges and incorporates by reference paragraphs 1–74 of this Complaint as though fully set forth herein.

76.     Zauhar actions and representations to Plaintiff described above were made intentionally, recklessly and negligently. In performing these actions and representations, Zauhar acted with oppression, fraud and malice.

77.     Zauhar actions and representations to Plaintiff described above were material to Plaintiff's case in the State Action.

78.     The representations described above were reasonably relied on by Plaintiff in retaining Zauhar, paying Zauhar and other acts performed by Plaintiff in reliance thereon.

79.     Said reliance by Plaintiff actually and proximately caused Plaintiff damages as set forth more fully above in an amount to be determined at trial.

## COUNT 5
### (Fraud)
### (Attorney Zauhar and Halberg Defense)

80.     Plaintiff re-alleges and incorporates by reference paragraphs 1–79 of this Complaint as though fully set forth herein.

81.     Zauhar made materially false statements of fact to Plaintiff alleging that fees and a retainer paid for the Middlecamp State Action were to be used for the entirely of this Action.

82.     Zauhar later made material statements alleging that she would use the Middlecamp State Action retainer to replenish unpaid civil fees.

83.    Zauhar tried to deceive Plaintiff by alleging that she would forgive unpaid civil filing fees in exchange for withdrawing from representation effectively exiting the Middlecamp State Action and coercing the retainer as payment for unpaid civil fees.

84.    Zauhar actions and representations to Plaintiff described above were made intentionally, recklessly and negligently. In performing these actions and representations, Zauhar acted with oppression, fraud and malice.

85.    Zauhar actions and representations to Plaintiff described above were material to Plaintiff's case in the State Actions.

86.    The representations described above were reasonably relied on by Plaintiff in retaining Zauhar, paying Zauhar and other acts performed by Plaintiff in reliance thereon.

87.    Said reliance by Plaintiff actually and proximately caused Plaintiff damages as set forth more fully above in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fredin prays that the Court:

(a)    Enter judgment in favor of Plaintiff against Defendant Attorney Zauhar and Defendant Halberg Defense;

(b)    Enter judgment awarding Plaintiff compensatory damages on all counts herein to compensate Plaintiff for Defendant Zauhar and Defendant Halberg Defense activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

(c)      Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as

allowed by applicable state and federal law in an amount to be determined at trial;

(d)      Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this

action as allowed by applicable state and federal law; and

(e)      Order such other relief that the Court deems just and appropriate.


Dated: August 26, 2018
        Hudson, WI


/s/ brock fredin
_____

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff, Pro Se*